Lawrence HALL et al.

v.

ST. HELENA PARISH SCHOOL
BOARD et al.

James WILLIAMS, Jr., et al.

v.

IBERVILLE PARISH SCHOOL
BOARD et al.

Yvonne Marie BOYD et al.

v.

POINTE COUPEE PARISH SCHOOL
BOARD et al.

Terry Lynn DUNN et al.

v.

LIVINGSTON PARISH SCHOOL
BOARD et al.

Donald Jerome THOMAS et al.

v.

WEST BATON ROUGE PARISH
SCHOOL BOARD et al.

Robert CARTER et al.

v.

WEST FELICIANA PARISH SCHOOL
BOARD et al.

Sharon Lynne GEORGE et al.

v.

C. Walter DAVIS, President, East Feliciana Parish School Board et al.

Welton J. CHARLES et al.

v.

ASCENSION PARISH SCHOOL
BOARD et al.

Civ. A. Nos. 1068, 2921, 3164, 3197,
3208, 3248, 3253, 3257.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Jan. 7, 1969.

A. P. Tureaud, New Orleans, La., Norman Amaker, New York City, for plaintiff, Hall and others.

John Doar, Asst. Atty. Gen., D. Robert Owen, Dept. of Justice, Louis C. LaCour, U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., Robert T. Moore, Joseph Ray Terry, Jr., Dept. of Justice, Civil Rights Div., Washington, D. C., Hugh W. Fleischer, New Orleans, La., for plaintiff-intervenor, United States.

Jack P. F. Gremillion, Atty. Gen. of La., Harry J. Kron, Jr., Asst. Atty. Gen. of La., Thibadaux, La., Thomas W. McFerrin, Sp. Counsel, Leonard Yokum, Dist. Atty., 21st Judicial Dist., Parish of St. Helena, Greensburg, La., for defendants.

J. M. Barnett, Denham Springs, La., for intervenors, Carl and Catherine Harvin.

A. P. Tureaud, A. M. Trudeau, Jr., New Orleans, La., Jack Greenberg, Norman Amaker, New York City, for plaintiff Charles and others.

Hugh W. Fleischer, New Orleans, La., Robert T. Moore, Joseph Ray Terry, Jr., and John H. Bingler, Jr., Dept. of Justice, Civil Rights Div., Washington, D. C., for plaintiff-intervenor, United States.

Jack P. F. Gremillion, Atty. Gen. of La., Harry J. Kron, Jr., Asst. Atty. Gen. of La., Aubert Talbot, Dist. Atty., Napoleonville, La., John F. Ward, Burton, Roberts & Ward, Baton Rouge, La., for defendants.

A. P. Tureaud, A. M. Trudeau, Jr., and Ernest N. Morial, New Orleans, La., Norman Amaker, Jack Greenberg, New York City, for plaintiff Williams and others.

Joseph Ray Terry, Jr., Robert. T. Moore, Dept. of Justice, Washington, D. C., and Hugh W. Fleischer, New Orleans, La., for plaintiff-intervenor, United States.

Sam J. D'Amico, D'Amico & Curet, John V. Parker, Parker & Parker, John F. Ward, Jr., Burton Roberts & Ward, Baton Rouge, La., Samuel Cashio, Maringouin, La., Jack P. F. Gremillion, Atty. Gen of La., Baton Rouge, La., for defendants.

A. P. Tureaud, A. M. Trudeau, Jr., Ernest N. Morial, New Orleans, La., Jack Greenberg, Norman Amaker, New York City, for plaintiff Boyd and others.

Hugh W. Fleischer, New Orleans; La., Robert T. Moore, Joseph Ray Terry, Jr., Dept. of Justice, Washington, D. C., for plaintiff-intervenor, United States.

Samuel C. Cashio, Dist. Atty., 18th Judicial Dist., Maringouin, La., John F. Ward, Baton Rouge, La., for defendants.

A. P. Tureaud & A. M. Trudeau, Jr., and Ernest N. Morial, New Orleans, La., Jack Greenberg and Norman Amaker, New York City, for plaintiff Dunn and others.

Malcolm F. Knight, Robert T. Moore, Joseph Ray Terry, Jr., and John H. Bingler, Jr., Dept. of Justice, Washington, D. C., Hugh W. Fleischer, New Orleans, La., for plaintiff-intervenor, United States.

Jack P. F. Gremillion, Atty. Gen. of La., Harry J. Kron, Jr., Asst. Atty. Gen. of La., Duncan S. Kemp., Dist. Atty., 21st Judicial Dist., Amite, La., W. M. Dawkins, Asst. Dist. Atty., 21st Judicial Dist., Livingston, La., for defendants.

A. P. Tureaud, New Orleans, La., Jack Greenberg, Norman Amaker, New York City, for plaintiff Thomas and others.

Jack F. Gremillion, Atty. Gen. of La., Harry J. Kron, Jr., Asst. Atty. Gen., of La., Charles H. Dameron, 1st Asst. Dist. Atty., Samuel C. Cashio, Dist. Atty., 18th Judicial Dist., Maringouin,

La., John F. Ward, Burton, Roberts & Ward, Baton Rouge, La., for defendants.

Murphy W. Bell, Baton Rouge, La., Robert Collins, Nils Douglas, Lolis Elie, Richard B. Sobol, George M. Strickler, Jr., New Orleans, La., Carl Rachlin, New York City, for plaintiff Carter and others.

Jack P. F. Gremillion, Atty. Gen. of La., Harry J. Kron, Jr., Asst. Atty. Gen. of La., Richard H. Kilbourne, Dist. Atty., 20th Judicial Dist., Clinton, La., Fred C. Jackson, Asst. Dist. Atty., 20th Judicial Dist., St. Francisville, La., for defendants.

Murphy Bell, Baton Rouge, La., Robert Collins, New Orleans, La., Carl Rachlin, New York City, Richard B. Sobol, George M. Strickler, Jr., New Orleans, La., for plaintiff George and others.

Thomas W. McFerrin, Harry J. Kron, Jr., Asst. Attys. Gen. of La., Baton Rouge, La., Richard Kilbourne, Dist. Atty., 20th Judicial Dist., Clinton, La., John F. Ward, Burton, Roberts & Ward, Baton Rouge, La., for defendants.

WEST, Chief Judge:

These school desegregation cases, involving the public school systems of the eight parishes (counties) within the Baton Rouge Division of the Eastern District of Louisiana are once again before the Court. This time they come up on motions filed not, apparently, on behalf of any actual parties to the suits, but by and on behalf of the attorneys of record for plaintiffs and the Attorney General of the United States, requesting "additional relief." Arguments on these motions were first presented to the Court on July 19, 1968, at which time this Court continued the hearing to November 4, 1968 and directed all parties to present, by that time, affidavits deposition testimony and briefs. The order of continuance was appealed, and on August 20, 1968, the Fifth Circuit Court of Appeals denied plaintiffs' motions for injunction pending appeal, and denied plaintiffs' request for an expedited hearing on appeal, and further denied plaintiffs' motions for a summary reversal of this Court's order. At this same time,

however, the Court of Appeals ordered this Court to do what it had already, on its own motion, done, i. e., set the motions for hearing on November 4, 1968. The Court of Appeals further directed that if this Court should conclude that the existing freedom of choice plan would not work, it should require the various school boards to formulate new plans and submit them to the Court by November 28, 1968. In view of this Court's findings, no such requirement was made. At the outset, this Court entertains serious doubt, under the circumstances of these cases, as to the authority of the attorneys of record for plaintiffs or the attorneys for the Department of Justice to reopen these matters. I say this simply because there has been no evidence, of any kind, that anyone, except the attorneys themselves, has made or filed any complaint as required by the Civil Rights Act of 1964, 42 U.S. C.A. § 2000c et seq. Section 407(a) of that Act provides in part as follows:

"Sec. 407. (a) Whenever the Attorney General receives a complaint in writing—

"(1) signed by a parent or group of parents to the effect that his or their minor children, as members of a class of persons similarly situated, are being deprived by a school board of the equal protection of the laws, or

"(2) signed by an individual, or his parent, to the effect that he has been denied admission to or not permitted to continue in attendance at a public college by reason of race, color, religion, or national origin,

"and the Attorney General believes the complaint is meritorious and certifies that the signer or signers of such complaint are unable, in his judgment, to initiate and maintain appropriate legal proceedings for relief and that the institution of an action will materially further the orderly achievement of desegregation in public education, the Attorney General is authorized * * * to institute for or in the name of the United States a civil action in any appropriate district court of the

United States * * *." 42 U.S.C.A. § 2000c–6.

Despite repeated requests by the Court, neither counsel for the alleged plaintiffs, nor counsel for the Government were able to present this Court with a single complaint made in writing or otherwise, by any student, parent, or guardian to the effect that any student, in any of the schools involved, is being deprived by a school board of the equal protection of the law or that any student has been denied admission to or not permitted to continue in attendance at a public school or college by reason of race, color, religion, or national origin. It would seem to this Court that, according to the Civil Rights Act, such a complaint is required before legal action can be initiated. These cases should be decided not upon the question of whether or not the schools are being operated in accordance with the sociological beliefs of the attorneys involved but rather on the question of whether or not they are being operated in such a way as to protect and preserve the constitutionally guaranteed rights of the students. But if past experience is any indicator, it would be a waste of time for this Court to require these "technicalities" to be complied with before deciding these cases. Since there seems to have been developed, at the appellate level, a separate set of standards to be applied in civil rights cases, we will leave the question of whether or not these cases are properly before the Court for determination on appeal. Suffice it to say that if we were permitted to apply the same standards that are required in ordinary civil actions, it would seem extremely doubtful that any justiciable issue has been presented to this Court. It would seem to this Court that the ends of justice would better be served if the litigants were required to adhere to both the well established rules of civil procedure and the specific requirements of the statutes involved before their cases were considered by the Court. But lest such a requirement now be misunderstood as a device for delay, we will leave that ques-

tion for the Court of Appeals and proceed with a determination of the issues presented.

The attorneys of record, who somehow seem to have become the plaintiffs in these cases, have asked for additional relief for people who apparently, according to the record, have not complained. Specifically they ask that the freedom of choice provision of the Jefferson-type decree, under which all of these school boards are presently operating, be discarded as unconstitutional and unworkable, and that the school boards now be required to come up with some new plan that will work more to the liking of the attorneys involved. They contend that this change of plans is required by the holding in Green v. County School Board of New Kent County, Va., 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716. Such a contention is, of course, without merit. The Supreme Court in *Green* specifically negated such a contention when it said:

"We do not hold that 'freedom of choice' can have no place in such a plan. We do not hold that a 'freedom-of-choice' plan might of itself be unconstitutional, although that argument has been urged upon us."

Thus, it is clear that there is no constitutional impediment to a freedom of choice plan as such. But on the other hand, it has been established by decisions too numerous to mention that there is an absolute duty resting with the various school boards to bring about, by one means or another, the complete and immediate disestablishment of the long standing state imposed dual school systems which they have, in the past, operated. As has been stated over and over again by the Fifth Circuit Court of Appeals and the Supreme Court of the United States, there must be no white schools and no negro schools, but just plain schools. As stated in *Green*:

"Moreover, a plan that at this late date fails to provide meaningful assurance of prompt and effective disestablishment of a dual system is also intolerable. * * * The burden on a

school board today is to come forward with a plan that promises realistically to work, and promises realistically to work *now*."

The question before us then is to determine whether or not, under the facts of these cases, such a mandate has been, or is being met by the defendant school boards.

 It must be borne in mind that unlike the situation in *Green*, the defendant school boards here are operating not under a plan devised by them, but under a plan devised, in every minute detail, by the Fifth Circuit Court of Appeals. This plan is the so-called "Jefferson Plan" enunciated in United States v. Jefferson County Board of Education, 380 F.2d 385 (1967). This plan was imposed upon all of the defendant school boards on August 7, 1967, to become effective at the commencement of the 1967–68 school year. Thus the plan has been in operation for only a little over one full school year. The question is not necessarily *has* it worked but rather *can* it work if properly implemented. And, if it has not worked, but if it *can* work, what must be done to make it work. A review of the statistics in these cases show quite clearly that the imposition of the Jefferson decree resulted in a substantial increase in the number of negroes attending white schools. For example, since the Jefferson decree became effective, the number of negroes attending white schools in East Feliciana Parish rose from 17 to 52; in West Feliciana Parish, from 31 to 119; in West Baton Rouge Parish, from 14 to 143; in Iberville Parish, from 25 to 448; in Ascension Parish, from 40 to 101; in Livingston Parish, from 3 to 7; in St. Helena Parish, from 25 to 71; and in Pointe Coupee Parish, from 25 to 166. While these numbers may seem relatively small when compared to the total number of negro students involved, they do, however, represent an increase of some 525%, i. e., from .8% to 5% of the total. These figures are not cited for the purpose of in any way indicating that the amount of integration resulting thus far

from the Jefferson Plan is enough to say that the burden of the school boards has necessarily been properly discharged. They are cited merely for the purpose of showing that substantial progress has been made, and that further progress, as hereinafter indicated, can be made under this plan. This Court is not unmindful of the fact that out of a total of 57 "white" schools involved in these cases, 27 are still "all white" and that not one of the 47 "negro" schools involved has a single white pupil in attendance. But this fact alone does not necessarily lead to the conclusion that the present plan will not work, or indeed that it has not worked. *Green* does not hold that every plan which, after being fully implemented, allows some schools to exist where only white children or only negro children are in attendance is per se unconstitutional. In *Green*, the United States Supreme Court has merely repeated what it has said many times before, i. e., that any desegregation plan adopted by a school board must, in order to be held constitutional, operate in such a way as to bring about the complete disestablishment, now, of all vestiges of *state imposed* dual school systems. If a school is in fact, attended solely by negro children or solely by white children as a result of a bona fide, unfettered freedom of choice, the segregation that thus results is not state imposed but is instead de facto segregation. Under the present state of the law, there is no constitutional impediment to purely de facto segregation. But the burden is upon the school board, when such segregation exists, to prove that the segregation is, in fact, de facto rather than state imposed. The Congress specifically recognized the individual right to de facto segregation when it enacted the Civil Rights Act of 1964. For example, in defining desegregation, the Act says:

"* * * but 'desegregation' shall not mean the assignment of students to public schools in order to overcome racial· imbalance." 42 U.S.C.A. § 2000c(b).

And again, the Act states specifically that:

"* * * nothing herein shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards." 42 U.S.C.A. § 2000c–6(a).

When the Supreme Court, in *Green*, repeatedly referred to "state imposed" segregation, it obviously took cognizance of this congressional mandate. Our inquiry must therefore be directed first to the question of whether or not the provisions of the present plan have, in fact, been implemented as ordered by this Court, and secondly, if they have not, will a proper implementation of that plan result in the disestablishment, now, of a state imposed segregated school system. After carefully reviewing the facts in these cases, it is the opinion of this Court that first, the provisions of the existing plan have not, in all cases, been fully implemented by the school boards, and second, a complete implementation of the present plan will result in all constitutional requirements having been met. In connection with the assignment of students to particular schools, the plan under which these schools are presently operating provides, inter alia, that during the "choice period" to be established by the school board prior to the opening of school at the beginning of each school year, each student, both white and negro, must exercise a free choice of schools. The plan then provides that any student who has *not* exercised his *choice* of school within a week after school opens *shall be assigned* to the school nearest his home where space is available under standards for determining available space, which standards shall be applied uniformly throughout the system. From the evidence presented to this Court, it seems apparent that in some instances these important provisions of the existing plan have not been fully implemented or enforced by the defendant school boards. For example, while the reports filed by the various defendant school boards with this Court pursuant to the requirements of the Jefferson decree under which they now operate indicate that in the Parishes of Ascension, Livingston, Pointe Coupee, and East Feliciana, all students did, in fact, exercise their freedom of choice as to the school they wished to attend, thus eliminating, under the plan, the necessity for geographic assignment, such was not the case in the Parishes of Iberville, West Feliciana, St. Helena, and West Baton Rouge. In the latter four parishes, the reports filed indicate that there were many students who did not exercise their freedom of choice but there is no indication that they were then assigned geographically to the school nearest their homes. It is also the opinion of this Court that a strict adherence to these requirements will result in the disestablishment of a state imposed dual system of schools such as is forbidden by existing law, while at the same time preserving the freedom of choice that this Court sincerely believes to be a constitutionally guaranteed right of every pupil. If, after scrupulously implementing these provisions, there should exist a school or schools which happen to have all white or all negro pupils, such would be the result of free choice, or of de facto segregation, which, under the present state of the law, does not, in this Court's opinion, violate constitutional mandates. Certainly there is nothing more democratic than freedom of choice. This simply must be preserved. The geographic assignment of those who do not affirmatively exercise a choice relieves those students of the burden which the Courts have decreed to be the burden of the school boards and thus overcomes the objection of improperly placing the burden of desegregation on those students.

Another way to accomplish the same end would be to initially assign all students to the school nearest their homes

and then to honor any requests for transfer to a school of the students' choice. While the same result would be reached in both cases, it seems that the present plan is the better of the two because there is less duplication of work involved. Before geographic assignments are made under the present plan, all students choosing a particular school are assigned to the school of their choice without the necessity of an initial assignment followed by reassignment because of the transfer request.

This Court is convinced that the present plan will, if followed, assure the prompt and effective disestablishment of all state imposed dual systems of schools in the eight parishes involved. Why, then, it will surely be asked, has it not done so? This Court is of the opinion that the mandate of the present plan has not been fully implemented. In the case of the four parishes previously mentioned, the record fails to show that all pupils who did not make an affirmative choice of schools were in fact assigned to the schools closest their homes. This is an extremely important provision of the present plan. It is important because it relieves those students who for one reason or another will not, or dare not, make an affirmative choice, from the burden of disestablishing a state imposed dual system, and it places that burden squarely upon the school boards, where the Courts have said it belongs. To ignore the geographic assignment provision of the plan largely defeats the purpose of the plan. It must be borne in mind that under the present plan even when the mandate of geographic assignment is honored, the right to freedom of choice still exists, as it must if we are to protect the constitutional rights of everyone rather than only those of a select few. The present plan specifically provides that within certain specific times the pupil may, even after a geographic assignment is made, make a specific choice and be transferred to the school of his choice. Thus, under this plan, the student is relieved, if he wishes to be, of making an affirmative choice, in which event he will know that he will attend the school closest his home, or, on the other hand, he may, if he wishes, make an affirmative choice of schools with the knowledge that he will be permitted to attend that particular school.

■■ Any consideration of why geographic assignments have not been made, if indeed they have not been, in accordance with the mandate of the plan, necessarily includes an inquiry into the good faith of the school boards. After carefully studying the local conditions and the progress made during the last year and a half toward desegregation of the schools in these eight parishes, this Court concludes that the school boards have acted in good faith. While they seem to have failed, in some instances, to have carried out the mandate concerning geographic assignment, they have nevertheless made considerable progress toward disestablishment of state imposed dual systems of schools. But while they have apparently acted in good faith in making noticeable progress toward desegregation, the failure to fully implement the existing plan can no longer be tolerated. If, after a *full implementation* of the present plan, in every detail, including assignment of students, integration of faculty, transportation, athletics, and all other school facilities and activities, it does not realistically work as contemplated by Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Brown v. Board of Education of Topeka, Kansas, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; and Green v. County School Board of New Kent County, Va., 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, then, and in that event, other means to secure that end must be sought. It can no longer be said that the plan is working if there remains any semblance, anywhere, of continued state imposed segregation in the schools. But until the present plan has been given full opportunity to work, this Court is reluctant to order new and different plans submitted.

In order that there be no misunderstanding about the compulsory nature of the desegregation plan presently in effect, all defendant school boards are hereby put on notice that should any defendant school board, at the commencement of the 1969–70 school year, and thereafter, fail to completely implement, in good faith, all details of the existing plans, this Court will then entertain contempt proceedings against all such persons who refuse or fail to comply with the mandate thus issued and contained in the existing desegregation plans.

We have concerned ourself primarily herein with the assignment of pupils to the various schools involved. By doing so we do not mean to imply that all is well insofar as desegregation of faculty and facilities is concerned. While good faith efforts have indeed been made toward faculty integration, nevertheless, with increased integration of students there must come increased integration of faculty. If the school boards are to be allowed to continue operating under the present plans, the commencement of the 1969–70 school year must bring with it not only a complete implementation of the student assignment provisions of the plans, but also a significant increase in faculty integration and a complete, total integration of transportation, athletics, and all other school facilities and activities. If a complete disestablishment of all state imposed dual systems of schools in these parishes does not result by the commencement of the 1969–70 school year, it may well be necessary for the various defendant school boards to be required to come up with new plans that will insure such results As of now, based upon the record and the provisions of the existing plans, this Court concludes that the additional relief sought by the attorneys for the named plaintiffs and by the attorneys for the Government should not be granted, and their motions will thus be denied. This Court will, of course, retain jurisdiction over the cases for the entry of such additional orders as it may, from time to time, deem necessary and advisable.