417 F.2d 801
 ST. HELENA PARISH SCHOOL BOARD et al.
v.
James WILLIAMS, Jr., et al., Plaintiffs-Appellants, United
States of America, Intervenor-Appellant,
v.
IBERVILLE PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 2921)
Yvonne Marie BOYD et al., Plaintiffs-Appellants, United
States of America, Intervenor-Appellant,
v.
The POINTE COUPEE PARISH SCHOOL BOARD et al.,
Defendants-Appellees. (Civil Action No. 3164)
Terry Lynn DUNN et al., Plaintiffs-Appellants, United States
of America, Intervenor-Appellant,
v.
LIVINGSTON PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 3197)
Donald Jerome THOMAS et al., Plaintiffs-Appellants,
v.
WEST BATON ROUGE PARISH SCHOOL BOARD et al.,
Defendants-Appellees. (Civil Action No. 3208)
Robert CARTER et al., Plaintiffs-Appellants,
v.
WEST FELICIANA PARISH SCHOOL BOARD et al.,
Defendants-Appellees. (Civil Action No. 3248)
Sharon Lynne GEORGE et al., Plaintiffs-Appellants,
v.
C. Walter DAVIS, President, East Feliciana Parish School
Board et al., Defendants-Appellees. (Civil Action No. 3253)
Welton J. CHARLES, Jr., et al., Plaintiffs-Appellants,
United States of America, Intervenor-Appellant,
v.
ASCENSION PARISH SCHOOL BOARD, and Gordon Webb,
Defendants-Appellees. (Civil Action No. 3257)
Rickey Dale CONLEY et al., Plaintiffs-Appellants,
v.
LAKE CHARLES SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 9981)
Ura Bernard LEMON et al., Plaintiffs-Appellants, United
States of America, Intervenor-Appellant,
v.
BOSSIER PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 10687)
Marcus GORDON et al., Plaintiffs-Appellants,
v.
JEFFERSON DAVIS PARISH SCHOOL BOARD et al.,
Defendants-Appellees. (Civil Action No. 10902)
Alfreda TRAHAN et al., Plaintiffs-Appellants,
v.
LAFAYETTE PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 10903)
Marilyn Marie MONTEILH et al., Plaintiffs-Appellants,
v.
ST. LANDRY PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 10912)
Virgie Lee VALLEY et al., Plaintiffs-Appellants, United
States of America,Intervenor-Appellant,
v.
RAPIDES PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 10946)
Joann GRAHAM et al., Plaintiffs-Appellants,
v.
EVANGELINE PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11053)
John ROBERTSON et al., Plaintiffs-Appellants,
v.
NATCHITOCHES PARISH SCHOOL BOARD et al.,
Defendants-Appellees. (Civil Action No. 11054)
Beryl N. JONES et al., Plaintiffs-Appellants, United States
of America, Intervenor-Appellant,
v.
CADDO PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11055)
Catherine BATTISE et al., Plaintiffs-Appellants,
v.
ACADIA PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11125)
James H. HENDERSON, Jr., et al., Plaintiffs-Appellants,
v.
IBERIA PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11126)
Margaret M. JOHNSON et al., Plaintiffs-Appellants, United
States of America, Intervenor-Appellant,
v.
JACKSON PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11130)
Jimmy ANDREWS et al., Plaintiffs-Appellants,
v.
CITY OF MONROE SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11297)
Yvornia Decarol BANKS et al., Plaintiffs-Appellants, United
States of America, Intervenor-Appellant,
v.
CLAIBORNE PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11304)
Dorothy Marie THOMAS et al., Plaintiffs-Appellants,
v.
ST. MARTIN PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11314)
Linda WILLIAMS et al., Plaintiffs-Appellants,
v.
MADISON PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11329)
Gwen BOUDREAUX et al., Plaintiffs-Appellants,
v.
ST. MARY PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11351)
Irma J. SMITH et al., Plaintiffs-Appellants, United States
of America, Intervenor-Appellant,
v.
CONCORDIA PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11577)
Vira CELESTAIN et al., Plaintiffs-Appellants,
v.
VERMILION PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 11908)
UNITED STATES of America, Plaintiff-Appellant,
v.
LINCOLN PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12071)
UNITED STATES of America, Plaintiff-Appellant,
v.
RICHLAND PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12169)
Jeremiah TAYLOR et al., Plaintiffs-Appellants,
v.
OUACHITA PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12171)
UNITED STATES of America, Plaintiff-Appellant,
v.
BIENVILLE PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12177)
UNITED STATES of America, Plaintiff-Appellant,
v.
GRANT PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12265)
UNITED STATES of America, Plaintiff-Appellant,
v.
DE SOTO PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12589)
UNITED STATES of America, Plaintiff-Appellant,
v.
AVOYELLES PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12721)
UNITED STATES of America, Plaintiff-Appellant,
v.
EAST CARROLL PARISH SCHOOL BOARD et al.,
Defendants-Appellees. (Civil Action No. 12722)
Billy Gene MOORE et al., Plaintiffs-Appellants,
v.
WINN PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12880)
Eric CLEVELAND et al., Plaintiffs-Appellants,
v.
UNION PARISH SCHOOL BOARD et al., Defendants-Appellees.
(Civil Action No. 12924)
Joyce Marie MOORE et al., Plaintiffs-Appellees,
v.
TANGIPAHOA PARISH SCHOOL BOARD et al.,
Defendants-Appellants. (Civil Action No. 15556).
 Nos. 26450, 27303, 27054, 27087, 27106, 27391.
 United States Court of Appeals Fifth Circuit.
 May 28, 1969.
Rehearing Denied and Rehearing En Banc Denied in No. 27106
June 30, 1969.
On Motion for Clarification and Amendment in Nos. 26450,
27303, 27054, 27087 and 27106 Aug. 25, 1969.
Certiorari Denied Nov. 10, 1969.
See 90 S.Ct. 218.
 
 No. 26450:Richard B. Sobol, George M. Strickler, Jr., Collins, Douglas & Elie, New Orleans, La., Murphy W. Bell, Baton Rouge, La., Robert P. Roberts, New Orleans, La., for appellants.
 Kenneth C. DeJean, Sp. Counsel to Atty. Gen., Baton Rouge, La., Richard H. Kilbourne, Dist. Atty., 20th Judicial District, Clinton, La., Fred C. Jackson, Asst. Dist. Atty., St. Francisville, La., Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Baton Rouge, La., for appellees.
 No. 27303:
 A. P. Tureaud, A. M. Trudeau, Jr., New Orleans, La., Jack Greenberg, Franklin E. White, New York City, Hugh W. Fleischer, Joseph Ray Terry, Jr., U.S. Dept. of Justice, Washington, D.C., Nathan Lewin, Merle W. Loper, Attys., Civil Rights Div., Dept. of Justice, Washington, D.C., Norman C. Amaker, William Bennett Turner, New York City, Louis C. Lacour, U.S. Atty., Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., Joseph Ray Terry, Jr., Hugh W. Fleischer, Attys., Dept. of Justice, Washington, D.C., for appellants. Jack P. F. Gremillion, Atty. Gen. of La., Kenneth C. DeJean, Sp. Counsel to Atty. Gen., Thomas McFerrin, Asst. Atty. Gen., Baton Rouge, La., Harry J. Kron, Jr., Thibodeaux, La., Samuel C. Cashio, Dist. Atty., Plaquemine, La., Aubert D. Talbot, Dist. Atty., Napoleonville, La., John F. Ward, Baton Rouge, La., Leonard E. Yokum, Dist. Attys., Amite, La., for appellees.
 No. 27054:
 Jack Greenberg, Franklin E. White, William Bennett Turner, Norman C. Amaker, New York City, A. P. Tureaud, New Orleans, La., Louis Berry, Alexandria, La., Murphy W. Bell, Baton Rouge, La., Marion Overton White, Opelousas, La., for appellants.
 Gus Voltz, Jr., Asst. Dist. Atty., Edwin O. Ware, Dist. Atty., 9th Judicial Dist., Alexandria, La., Bernard N. Marcantel, Jennings, La., Henry L. Yelverton, Lake Charles, La., J. Bennett Johnston, Jr., John A. Richardson, Shreveport, La., J. Y. Fontenot, Dist. Atty., Opelousas, La., Nolan J. Edwards, Asst. Dist. Atty., Crowley, La., Harry J. Kron, Jr., Thibodaux, La., Bernard E. Boudreaux, Jr., Franklin, La., Knowles M. Tucker, New Iberia, La., L. O. Fusilier, J. William Pucheau, Ville Platte, La., Ronald C. Martion, dist. Atty., Natchitoches, La., for appellees.
 
 No. 27087:
 
 1
 Nils R. Douglas, Richard B. Sobol, George M. Strickler, Jr., Robert P. Roberts, New Orleans, La., John F. Ward, Baton Rouge, La., for appellants.
 
 
 2
 W. C. Falkenheiner, Dist. Atty., Vidalia, La., James T. Spencer, Farmerville, La., Albin P. Lassiter, Monroe, La., Fred L. Jackson, Homer, La., Kermit M. Simmons, Winnfield, La., for appellees.
 
 No. 27106:
 
 3
 A. P. Tureaud, New Orleans, La., Stephen J. Pollak, Asst. Atty. Gen., Civil Rights Div., Merle W. Loper, Nathan Lewin, Jesse H. Queen, Robert T. Moore, Frank M. Dunbaugh, Attys., U.S. Dept. of Justice, Washington, D.C., Edward L. Shahun, U.S. Atty., Shreveport, La., William Bennett Turner, Jack Greengerg, Norman C. Amaker, Franklin E. White, New York City, for appellants.
 
 
 4
 Fred L. Jackson, Homer, La., Edwin O. Ware, Dist. Atty., Gus Voltz, Jr., Asst. Dist. Atty., Alexandria, La., E. Rudolph McIntyre, Winnsboro, La., John A Richardson, J. Bennett Johnston, Jr., Shreveport, La., Thomas A. Self, Asst. Dist. Atty., Many, La., for appellees.
 
 No. 27391:
 
 5
 Leonard E. Yokum, Dist. Atty., Hammond, La., John F. Ward, Baton Rouge, La., Charles B. W. Palmer, Amite, La., Kopfler & Causey, John D. Kopfler, Hammond, La., for appellants.
 
 
 6
 A. P. Tureaud, A. M. Trudeau, Jr., New Orleans, La., Jack Greenberg, Franklin E. White, New York City, for appellees.
 
 
 7
 Before JOHN R. BROWN, Chief Judge, GODBOLD, Circuit Judge, and CABOT, District Judge.
 
 GODBOLD, Circuit Judge:
 
 8
 We have before us appeals from three district court decrees covering thirty-six parish school systems and two city school systems, all in the state of Louisiana. These cases were submitted and argued April 21, 1969, two years after the en banc decision of this court in Jefferson II,[1] and eleven months after the decision of the United States Supreme Court in Green v. School Bd. of New Kent County.[2] All of the school districts involved are under the uniform decree that Jefferson II required for school systems in the Fifth Circuit operating under freedom of choice plans.
 
 I. Background
 
 9
 Twenty-nine of the districts are appellees in appeals from an en benc decision[3] of the District Court for the Western District of Louisiana, which declined to order modification, requested on the authority of Green in existing desegregation plans.[4]
 
 
 10
 Eight parishes are appellees in similar appeals from a decree of the District Court for the Eastern District of Louisiana.[5]
 
 
 11
 The Tangipahoa Parish School Board is appellant in an appeal from another decree of the Eastern District[6] directing it to change from a Jefferson-decree freedom of choice plan to one calling for the assignment of students 'by the adoption of geographic attendance zones, or pairing of classes, or both.'
 
 
 12
 We begin with principles both basic and familiar to all who are concerned with the complex problem of ending the dual school system in the South. There can be no doubt of the duty of school boards to act affirmatively to abolish all vestiges of state-imposed segregation of the races in the public schools. United States v. Indianola Municipal Separate Sch. Dist., 5 Cir. 1969, 410 F.2d 626 (1969); Henry v. Clarksdale Municipal Separate Sch. Dist., 5 Cir. 1969, 409 F.2d 682 (1969); Adams v. Mathews,403 F.2d 181 (5th Cir. 1968); Jefferson II, supra.
 
 
 13
 The respective burdens and roles of school boards and district courts are articulated in Green itself:
 
 
 14
 * * * The burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work now.
 
 
 15
 The obligation of the district courts, as it always has been, is to assess the effectiveness of a proposed plan in achieving desegregation. There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance. It is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress toward disestablishing state-imposed segregation. It is incumbent upon the district court to weigh that claim in light of the facts at hand and in light of any alternatives which may be shown as feasible and more promising in their effectiveness. Where the court finds the board to be acting in good faith and the proposed plan to have real prospects for dismantling the state-imposed dual system 'at the earliest practicable date,' then the plan may be said to provide effective relief. Of course, the availability to the board of other more promising courses of action may indicate a lack of good faith; and at the least it places a heavy burden upon the board to explain its preference for an apparently less effective method. Moreover, whatever plan is adopted will require evaluation in practice, and the court should retain jurisdiction until it is clear that state-imposed segregation has been completely removed.
 
 
 16
 88 S.Ct. at 1694-1695, 20 L.Ed.2d at 724.
 
 
 17
 If under an existent plan there are no whites, or only a small percentage of whites, attending formerly all-Negro schools, or only a small percentage of Negroes enrolled in formerly all-white schools, then the plan, as a matter of law, is not working. Henry v. Clarksdale, supra; Adams v. Mathews, supra.
 
 
 18
 The good faith of a school board in acting to desegregate its schools is a necessary concomitant to the achievement of a unitary school system, but it is not itself the yeadstick of effectiveness.[7]
 
 
 19
 The majority of the school boards involved in these appeals did not begin any type of desegregation of their schools prior to being ordered to do so for the 1965-1966 school year.[8] All have been operating for the 1967-68 and 1968-69 school years under Jefferson-decree freedom of choice plans for pupil assignment, which under numerous decisions of this circuit are required to be uniform.
 
 
 20
 All now know, judges, lawyers and school boards, that freedom of choice, Jefferson variety or otherwise, is not a constitutional end in itself but only a means to the constitutionally required end of the termination of the dual school system. Green, supra; Jefferson II, supra. Since Green this court explicitly has rejected freedom of choice plans that were found to be demonstrably unsuitable for effectuating transition from dual school systems to unitary non-discriminatory systems. See, e.g., Anthony v. Marshall County Bd. of Educ., 5 Cir. 1969, 409 F.2d 1287 (1969); United States v. Greenwood Municipal Separate School Dist., 406 F.2d 1086 (5th Cir. 1969). See also Graves v. Walton County Bd. of Educ., 403 F.2d 181, 189 (5th Cir. 1968); Bd. of Public Instruction of Duval County v. Braxton, 402 F.2d 900 (5th Cir. 1968).
 
 II. The Western District Cases
 
 21
 The Western District Court, sitting en banc, found that the operation of Jefferson-type freedom of choice in the school districts before it 'has real prospects of dismantling the dual system of schools at the earliest practicable date * * *.' and concluded that the best method available to eradicate the dual system of schools in these districts is freedom of choice.[9]
 
 
 22
 Appellants in the Western District cases contend that the statistical record manifestly reveals that the dual system continues and that freedom of choice has failed to produce meaningful results. They urge that the statistical record requires reversal when considered in light of Green and the cases in this circuit following Green.
 
 
 23
 The appellee school boards insist that Green does not foreclose the continuation of their Jefferson-decree freedom of choice plans. They read the statistics as revealing that progress, though in most instances statistically nominal, has been made toward the elimination of the dual system. They urge that the district court appropriately could conclude that the uniform Jefferson-decree freedom of choice plans under which they are operating do provide the effective relief referred to by Green, because, in the language of Green, they are operating in good faith and under plans which have real prospects for dismantling the state-imposed dual system 'at the earliest practicable date.' 88 S.Ct. 1689, 20 L.Ed.2d at 724.
 
 
 24
 We turn to the facts. In the Appendix to this opinion we set out the best statistical data made available to this court for the 1967-68 and 1968-69 school years, and such data as presently is available for 1969-70 (recognizing that the latter necessarily is not complete: see note 2. to the Appendix.) In the current school year, 1968-69, in every one of these school districts there is at least one all-Negro school, in most districts many more than just one.
 
 
 25
 In all of the twenty-nine districts, for the current school year, only two white students exercised their freedom of choice by electing to attend all-Negro schools. To the extent data is available for the 1969-70 school year, from choice forms already exercised and reported to us since oral argument of these cases, no change of substantial consequence in this situation can be projected. See Appendix.
 
 
 26
 The number of Negro students attending formerly all-white schools has risen slightly since the adoption of the Jefferson-decree plans, but for the current school year the percentage this represents of the total Negro student population is minimal-- only five of these twenty-nine systems have more than ten percent of their Negro children attending formerly all-white schools. Four parishes have less than one percent integration.
 
 
 27
 In no instance does the data made available to us for expected 1969-70 pupil assignment vary the situation existent for the current year sufficiently that compliance with constitutional standards can be projected.
 
 
 28
 We do not abdicate our judicial role to statistics. But when figures speak we must listen. It is abundantly clear that freedom of choice, as presently constituted and operating in the Western District school districts before us, does not offer the 'real prospect' contemplated by Green, and 'cannot be accepted as a sufficient step to 'effectuate a transition' to a unitary system.' 391 U.S. 430, 88 S.Ct. at 1696, 20 L.Ed.2d at 726-727.
 
 
 29
 In addition the boards are required to examine other alternatives. The presence of other and more promising courses of action at the least may indicate lack of good faith by the board and place a heavy burden on the board to explain its preference for an apparently less effective method. Green, at 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 724. If there are reasonably available other ways promising speedier and more effective conversion to a unitary non-racial system, freedom of choice must be held unacceptable. Id. 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed. at 725. Anthony v. Marshall County, supra; United States v. Greenwood, supra.
 
 
 30
 We reverse and remand these cases to the district court in order that a new plan may be put into effect in each school district. The obligation is upon the school boards to come forward with realistic and workable plans, and the assessment and initial review and approval or rejection of each plan is for the district court, not for this court, removed as we are from 'the circumstances present and the options available in each (of twenty nine) instance(s).' Green, supra, 391 U.S. 430, 88 S.Ct. 1689, 1695, 20 L.Ed.2d at 724; Anthony v. Marshall County, supra; United States v. Greenwood,supra; Adams v. Mathews, supra; Bd. of Public Instruction of Duval County v. Braxton, supra; Henry v. Clarksdale, supra.[10] This is not to say that the district court on the scene may not, if it thinks best, require a uniform approach by all districts.[11]
 
 
 31
 There are many methods and combinations of methods available for consideration, either on a district-by-district basis or on a uniform basis if the district court so directs. Some of these are geographic zoning if it tends to disestablish the dual system, Davis v. Bd. of School Com'rs of Mobile, Ala., 393 F.2d 690 (5th Cir. 1968),[12] pairing of grades or of schools, educational clusters or parks, discontinuance of use of substandard buildings and premises, rearrangement of transportation routes, consolidation of schools, appropriate location of new construction, and majority-to-minority transfers. The resources of the Educational Resources Center for School Desegregation, at New Orleans, are available to the boards and may be utilized.[13] We set out in the margin the approach recently taken by the United States District Court for the District of South Carolina, sitting en banc in Whittenberg v. Greenville County School District, 298 F.Supp. 784 (D.C.S.C. March 31, 1969) a case concerning 22 of the 93 school districts in South Carolina.[14]
 
 
 32
 We are urged by appellants to order on a plenary basis for all these school districts that the district court must reject freedom of choice as an acceptable ingredient of any desegregation plan. Unquestionably as now constituted, administered and operating in these districts freedom of choice is not effectual. The Supreme Court in Green recognized the general ineffectiveness of freedom of choice.[15] But in that case, concerning only a single district having only two schools, the court declined to hold 'that 'freedom of choice' can have no place in * * * a plan' that provides effective relief, and recognized that there may be instances in which freedom of choice may serve as an effective device, and remanded to the district court with directions to require the board to formulate a new plan.[16]
 
 
 33
 While we have directed most of our discussion to pupil assignment, integration of faculty is of equal importance, and the boards must come forward with affirmative plans in that regard. 'The school board must do everything within its power to recruit and reassign teachers so as to provide for a substantial degree of faculty integration,' which includes withholding of teacher contracts if necessary, United States v. Indianola, supra; United States v. Greenwood, supra. The pattern of teacher assignments to a particular school must not be identifiable as tailored for a heavy concentration of either Negro or white students. Davis v. Mobile County,supra; United States v. Greenwood, supra; United States v. Indianola,supra.
 
 
 34
 Also a plan which will 'effectuate a transition to a racially non-discriminatory school system' must include effectual provisions concerning staff, facilities, transportation and school activities-- the entire school system.
 
 III. The Eastern District Cases
 
 35
 In the Eastern District cases the district judge concluded that freedom of choice was working well and was the best available method for the school boards to reach their constitutional obligations.
 
 
 36
 Appellants and the school boards make the same contentions in these cases as were made in the Western District cases. Again, the statistical evidence makes abundantly clear that the freedom of choice plans as presently constituted, administered and operating, are failing to eradicate the dual system. See Appendix. For the current year not one of these districts has as many as ten percent of its Negro students enrolled in formerly all-white schools. The 1969-70 data shows that Iberville Parish has achieved ten percent, up from 9.2% For the current year. In all these districts no white student chose to attend an all-Negro school in the current year, and none has chosen an all-Negro school for 1969-70. Forty-six all-Negro schools exist in these parishes in 1968-69. As in the Western District, the partial 1969-70 data supplied to this court does not indicate any real chance of attainment of constitutional standards in 1969-70. The boards must adopt new plans.
 
 
 37
 In addition, in evaluating the plans before him the district judge did not apply the standard of whether the plans are working but rather that of whether they could work. This is an erroneous standard. When testing the sufficiency of a plan that has been in operation sufficiently long to produce meaningful empirical data, that data must be considered and a determination made of whether the plan is effectuating a transition to a racially non-discriminatory school system. And Green requires the district judge to weigh the existing plan in the light both of the facts at hand and of any alternatives which may be shown as feasible and more promising. The district court must consider the alternatives.
 
 
 38
 Also the district court erred in holding that segregation which continues to exist after the exercise of unfettered free choice is 'de facto' segregation and as such constitutionally permissible.
 
 
 39
 These cases must be reversed and remanded under the same directions as the Western District cases.
 
 IV. The Tangipahoa Parish Case
 
 40
 Pursuant to Green the district court required the Tangipahoa School Board to present a new plan to replace the existing freedom of choice plan which on October 15, 1968 it found to be ineffective. The court conducted hearings, similar to those now mandated to be held in the Western District and for the other Eastern District cases, and approved a new plan. This court has said repeatedly what we say in this opinion, that the responsibility for structuring and administering existing and new plans for disestablishing the dual system is upon the school boards and the administrators, and the primary responsibility for assessing and reviewing the plan and adopting necessary changes is upon the district court on the scene rather than at the appellate level. In the Tangipahoa case the district court correctly applied this policy, after a review of the facts. We affirm its decision.
 
 V.
 
 41
 Moore v. Tangipahoa Parish, No. 27391, is affirmed. All other cases are reversed and remanded to the district courts with the following instructions.
 
 
 42
 (a) These cases shall receive the highest priority.
 
 
 43
 (b) No later than thirty days from the date of the mandate each school board shall submit to the district court a proposed new plan for its school district to be effective with the commencement of the 1969-70 school term. Provided, however, if the district court desires to require a uniform type of plan, or a uniform approach to the formulation of plans, or issue instructions to the boards of methods that it will or will not consider, or other appropriate instructions, it shall enter its order to that effect within ten days of the date of the mandate. If the district court enters such an order the maximum time for filing plans shall be thirty days from the date of such order.
 
 
 44
 (c) The parties shall have ten days from the date a plan is filed with the district court to file objections or suggested amendments thereto.
 
 
 45
 (d) For plans as to which objections are made or amendments suggested, or which in any event the district court will not approve without hearing, the district court shall commence hearings beginning no later than ten days after the time for filing objections has expired.
 
 
 46
 (e) New plans for all districts effective for the beginning of the 1969-70 school term shall be completed and approved by the district courts no later than July 25, 1969.
 
 
 47
 Because of the urgency of formulating and approving plans to be effective for the 1969-70 school term it is ordered as follows. The mandate of this court shall issue immediately. This court will not extend the time for filing petitions for rehearing or briefs in support of or in opposition thereto. Any appeals from orders or decrees of the district court on remand shall be expedited. Any appeal may be on the original record. The record on any appeal shall be lodged with this court and appellant's brief filed, all within thirty days of the date of the order or decree of the district court from which the appeal is taken.
 
 
 48
 ---------------------------------------------------
 School System No. of
 Negro
 in %
 Total Total Formerly
 Number Number White
 Negro White Schools
---------------------------------------------------
No. 27087, 27054
27106
Western District
---------------------------------------------------
Acadia
 1967-68 N.A. 1 -- -- 2.2
 1968-69 2694 8930 149 5.5
 1969-70 2 2062 8199 190 9.2
---------------------------------------------------
Avoyelles
 1967-68 3249 5909 203 6.25
 1968-69 3407 5982 410 12.03
 1969-70 N.A. -- -- --
---------------------------------------------------
Bienville
 1967-68 2429 1760 55 2.26
 1968-69 2580 1944 60 2.33
 1969-70 2487 1865 81 3.25
---------------------------------------------------
Bossier
 1967-68 4249 12,760 137 3.22
 1968-69 4268 13,949 188 4.4
 1969-70 3726 13,408 286 7.67
---------------------------------------------------
Caddo
 1967-68 24,700 33,044 396 1.6
 1968-69 6 25,414 33,879 642 2.5
 1969-70 22,600 32,002 1113 4.9
---------------------------------------------------
Calcasieu
 1967-68 N.A. -- -- 7.6
 1968-69 9787 28,758 956 9.8
 1969-70 N.A. -- -- --
---------------------------------------------------
-----------------------------------------------------------
 No. of Total Total CROSS
 ---------------
 Whites No. of No. of No. of
 in Negro White Negro
% Formerly % Teachers Teachers Teachers
Change Negro in %
 Schools Formerly
 White
 Schools
-----------------------------------------------------------
-----------------------------------------------------------
 1 N.A. N.A. -- -- --
k3.3 0 0 127 389 23 18.1
k3.7 0 0 140 3 357 41 29.28
-----------------------------------------------------------
 0 0 126 293 6 4.76
k5.78 0 0 126 317 8 6.35
-- -- -- N.A. -- -- --
-----------------------------------------------------------
 0 0 118 104 7 5.93
 k.07 0 0 133 4 121 13 10.11
 k.92 0 0 N.A. -- -- --
-----------------------------------------------------------
 0 0 212 551 14 6.6
k1.18 1 .007 213 614 33 15.49
k3.27 0 0 N.A. 5 -- -- --
-----------------------------------------------------------
 1 .003 1117 1418 15 1.34
 k.9 1 .003 1099 1408 96 8.73
k2.4 158 .49 N.A. 7 -- -- --
-----------------------------------------------------------
 N.A. -- N.A. -- -- --
k2.2 0 0 417 1,379 31 7.4
 -- -- -- N.A. -- -- --
-----------------------------------------------------------
-------------------------------------------------------------------------------
OVERS Total STUDENTS FACULTY
----------------------- -------------------- --------------------
 No. of No. of No. of No. of No. of No. of
 White Schools Schools Schools Schools Schools
 Teachers in with with with with
 in % System All- All- All- All-
 Formerly Negro White Negro White
 Negro Students Students Faculty Faculty
 Schools
-------------------------------------------------------------------------------
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 12 3.08 22 4 9 -- 6
 12 3.36 22 4 8 0 0
-------------------------------------------------------------------------------
 3 1.02 N.A. -- -- -- --
 9 2.84 17 3 1 0 6
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 4 4.04 N.A. -- -- -- --
 13 10.67 11 5 0 0 0
 -- -- 11 5 2 N.A. --
-------------------------------------------------------------------------------
 7 1.27 N.A. -- -- -- --
 22 3.58 24 5 5 0 1
 -- -- 25 6 2 N.A. --
-------------------------------------------------------------------------------
 7 .49 N.A. -- -- -- --
 66 4.68 77 26 15 0 2
 -- -- 76 27 10 N.A. --
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 28 2.03 73 21 13 16 34
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 
 
 
 [1]
 Not available. This signal followed by dashes in adjoining columns means
 figures for all such columns are available
 
 
 [2]
 The 1969-70 figures for all school systems, where shown, are based upon the
 incompleete results of the latest choice period (March 1, 1969 to April 1,
 1969). They are not intended to be a completely accurate forcast of the
 racial make-up of the schools involved for 1969-70. At oral argument of these
 cases the parties were directed to furnish this information to the court to
 the extent possible, and in most instances they have done so.
 
 
 [3]
 Figures given for faculty cross-overs for 1969-70 in all school systems,
 where shown, represent only the planned or tenative assignments as reported
 to the court by the school boards since oral argument.
 
 
 [4]
 Fractions have been dropped from teacher cross-over figures, with no
 attempt to round off the figure.
 
 
 [5]
 In a report filed in the district court February 27, 1967, a copy of which
 has been filed with this court pursuant to our oral order for additional
 data, the Bossier Parish School Board states that it has set as a minimum
 goal for 1969-70 a 100% increase in faculty integration.
 
 
 [6]
 In this parish there are minor discrepancies between those figures collated
 by the appellants and those by the United States. The differences are nominal
 and do not impel a different conclusion on any issue in the case. We use
 appellannts' figures.
 
 
 [7]
 In a report filed in the district court on February 21, 1969 Caddo Parish
 states it has a goal of increasing faculty cross-over by 50% for the 1969-70
 school year.
 ----------------------------------------------
School System No. of
 Negro
 in %
 Total Total Formerly
 Number Number White
 Negro White Schools
----------------------------------------------
City of Monroe
 1967-68 5249 5775 22 4
 1968-69 4952 5703 54 1.0
 1969-70 N.A. -- -- --
----------------------------------------------
Claiborne
 1967-68 2362 1695 24 1.02
 1968-69 2334 1704 23 .99
 1969-70 N.A. -- -- --
----------------------------------------------
Concordia
 1967-68 3240 3767 32 .99
 1968-69 3189 3767 37 1.16
 1969-70 N.A. -- -- --
----------------------------------------------
De Soto
 1967-68 3951 2487 26 .66
 1968-69 3768 2430 34 .90
 1969-70 3720 2432 36 .96
----------------------------------------------
East Carroll
 1967-68 2611 1482 106 4.06
 1968-69 2627 1479 133 5.06
 1969-70 2049 1439 124 6.05
----------------------------------------------
Evangeline
 1967-68 N.A. -- -- 2.9
 1968-69 3114 5624 71 2.3
 1969-70 N.A. -- 58 --
----------------------------------------------
---------------------------------------------------------
 N0. of Total Total CROSS
 ---------------
 Whites No. of No. of No. of
 in Negro White Negro
 % Formerly % Teachers Teachers Teachers
Change Negro in %
 Schools Formerly
 White
 Schools
---------------------------------------------------------
 0 0 214 253 4 1.86
k .6 0 0 215 264 25 11.6
-- -- -- N.A. -- -- --
---------------------------------------------------------
 0 0 115 102 0 0
- .03 0 0 112 108 0 0
-- -- -- N.A. -- -- --
---------------------------------------------------------
 0 0 147 184 2 1.36
k .17 0 0 160 184 14 8.75
-- -- -- N.A. -- -- --
---------------------------------------------------------
 0 0 193 154 8 4.15
k .24 0 0 184 136 14 7.61
k .02 0 0 N.A. -- -- --
---------------------------------------------------------
 0 0 109 84 4 3.67
k1.0 0 0 97 83 4 4.12
k .99 0 0 N.A. * -- -- --
---------------------------------------------------------
 0 0 N.A. -- -- --
- .6 0 0 142 274 19 13.38
 1 -- N.A. -- -- --
---------------------------------------------------------
-------------------------------------------------------------------------------
 OVERS Total STUDENTS FACULTY
------------------------ -----------------------------------------
 No. of No. of No. of No. of No. of No. of
 White Schools Schools Schools Schools Schools
 Teachers in with with with with
 in % System All- All- All- All-
 Formerly Negro White Negro White
 Negro Students Students Faculty Faculty
 Schools
-------------------------------------------------------------------------------
 1 .39 18 5 6 5 7
 27 10.2 18 6 2 0 0
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 8 7.84 N.A. -- -- -- --
 8 7.41 10 5 2 1 5
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 4 2.17 N.A. -- -- -- --
 13 7.05 12 4 4 0 0
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 7 4.55 N.A. -- -- -- --
 14 10.29 14 7 4 0 0
 -- --N.A. -- -- -- --
-------------------------------------------------------------------------------
 5 5.95 N.A. -- -- -- --
 7 8.43 9 5 2 0 2
 -- -- 9 5 0
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 12 4.3 14 5 2 N.A. --
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 
 
 [8]
 In its report to the district court in February, the East Carroll School
 Board states it has plans to increase faculty integration by approximately
 100% in 1969-70.
 --------------------------------------------------
 School System No. of
 Negro
 in %
 Total Total Formerly
 Number Number White
 Negro White Schools
--------------------------------------------------
Grant
 1967-68 943 2405 48 5.09
 1968-69 1061 2676 39 3.68
 1969-70 N.A. -- -- --
--------------------------------------------------
Iberia
 1967-68 N.A. -- -- 6.2
 1968-69 4897 10,070 426 8.7
 1969-70 N.A. -- -- --
--------------------------------------------------
Jackson
 1967-68 1525 2354 78 5.11
 1968-69 1564 2317 83 5.31
 1969-70 1581 2278 82 5.18
--------------------------------------------------
Jefferson Davis
 1967-68 N.A. -- -- 8.3
 1968-69 2069 5976 270 13.0
 1969-70 N.A. -- 280 N.A.
--------------------------------------------------
Lafayette
 1967-68 N.A. -- -- 10.0
 1968-69 6984 20,311 1,195 17.0
 1969-70 6533 21,011 1539 23.5
--------------------------------------------------
Lincoln
 1967-68 3126 3630 96 3.07
 1968-69 3139 3682 116 3.70
 1969-70 -- N.A. -- --
--------------------------------------------------
-------------------------------------------------------------
 No. of Total Total CROSS
 ---------------
 Whites No. of No. of No. of
 in Negro White Negro
% Formerly % Teachers Teachers Teachers
Change Negro in %
 Schools Formerly
 White
 Schools
-------------------------------------------------------------
 0 0 49 127 0 0
-1.41 0 0 51 138 3 5.88
-- -- -- N.A. -- -- --
-------------------------------------------------------------
 0 0 N.A. -- -- --
k2.5 0 0 231 430 24 5.58
-- -- 0 N.A. -- -- --
-------------------------------------------------------------
 0 0 84 124 8 9.52
k .2 0 0 81 128 8 9.87
- .13 0 0 N.A. -- -- --
-------------------------------------------------------------
 0 0 N.A. -- -- --
k4.7 0 0 110 287 11 10.0
-- -- -- N.A. -- -- --
-------------------------------------------------------------
 0 0 N.A. -- -- --
k7.0 0 0 283 911 45 15.9
k6.5 2 .00009 N.A. -- -- --
-------------------------------------------------------------
 0 0 133 174 5 3.76
k .63 0 0 142 182 16 11.74
-- -- -- N.A. -- -- --
-------------------------------------------------------------
-------------------------------------------------------------------------------
OVERS Total STUDENTS FACULTY
---------------------- --------------------- --------------------
 No. of No. of No. of No. of No. of No. of
 White Schools Schools Schools Schools Schools
 Teachers in with with with with
 in % System All- All- All- All-
 Formerly Negro White Negro White
 Negro Students Students Faculty Faculty
 Schools
-------------------------------------------------------------------------------
 0 0 N.A. -- -- -- --
 4 2.90 8 2 4 0 4
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 2 4.65 30 11 4 9 7
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 7 5.64 N.A. -- -- -- --
 8 5.25 11 4 2 0 0
 -- -- 11 4 2 N.A. --
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 2 .69 19 5 1 3 2
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 28 3.07 35 10 4 1 0
 -- -- 36 9 2 N.A. --
-------------------------------------------------------------------------------
 7 4.02 N.A. -- -- -- --
 17 9.34 19 9 4 2 1
 -- -- N.A. -- -- -- --
-------------------------------------------------------------------------------
 
 
 [6]
 In this parish there are minor discrepancies between those figures collated
 by the appellants and those by the United States. The differences are nominal
 and do not impel a different conclusion on any issue in the case. We use
 appellannts' figures.
 ---------------------------------------------------
School System No. of
 Negro
 in %
 Total Total Formerly
 Number Number White
 Negro White Schools
------------------------------------------------
Madison
 1967-68 N.A. -- -- 2.4
 1968-69 3235 1255 83 2.6
 1969-70 2929 1202 91 3.1
------------------------------------------------
Natchitoches
 1967-68 N.A. -- -- 2.1
 1968-69 4601 4327 101 2.2
 1969-70 N.A. -- -- --
------------------------------------------------
Ouachita
 1967-68 4858 12,801 47 .9
 1968-69 4831 13,044 79 1.6
 1969-70 4071 12,392 102 2.5
------------------------------------------------
Rapides
 1967-68 9168 17,712 302 3.29
 1968-69* 9671 18,856 402 4.3
 1969-70 N.A. -- -- --
------------------------------------------------
Richland
 1967-68 3260 3260 11 .34
 1968-69 3112 3354 28 .90
 1969-70 3497 3340 77 2.2
------------------------------------------------
St. Landry
 1967-68 N.A. - - 3.0
 1968-69 10,754 11,779 330 3.0
 1969-70 N.A. -- -- --
------------------------------------------------
------------------------------------------------------------
 No. of Total Total CROSS
 ---------------
 Whites No. of No. of No. of
 in Negro White Negro
 % Formerly % Teachers Teachers Teachers
Change Negro in %
 Schools Formerly
 White
 Schools
------------------------------------------------------------
 0 0 N.A. -- -- --
 k .2 0 0 137 81 5 3.64
 k .5 0 0 N.A. -- 9 --
------------------------------------------------------------
 N.A. -- N.A. -- -- --
 k .1 N.A. -- 247 301 29 11.74
-- -- -- N.A. -- -- --
------------------------------------------------------------
 0 0 200 542 7 3.5
 k .7 0 0 N.A. -- -- --
 k .9 1 .0008
------------------------------------------------------------
 0 0 409 766 5 1.22
 k1.01 0 0 392 786 19 4.84
-- -- -- N.A. -- -- --
------------------------------------------------------------
 0 0 139 168 0 0
 k .56 0 0 150 175 11 7.33
 k1.3 0 0 N.A. -- -- --
------------------------------------------------------------
-- 0 0 N.A. -- -- --
.0 0 0 484 547 23 4.75
-- -- -- N.A. -- -- --
------------------------------------------------------------
------------------------------------------------------------------------
OVERS Total STUDENTS FACULTY
------------------ -------------------------------------------
 No. of No. of No. of No. of No. of No. of
 White Schools Schools Schools SchoolsSchools
Teachers in with with with with
 in % System All- All- All- All-
Formerly Negro White Negro White
 Negro Students Students Faculty Faculty
Schools
------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 13 16.04 8 5 0 0 1
 19 -- 8 5 0 0 0
------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 33 10.96 26 10 7 N.A. --
 -- -- N.A. -- -- -- --
------------------------------------------------------------------------
 1 .018 37 12 15 10 23
 -- -- 37 12 13 N.A. --
 36 10 12 N.A. --
------------------------------------------------------------------------
 3 .39 N.A. -- -- -- --
 23 2.92 51 19 16 4 5
 -- -- N.A. -- -- -- --
------------------------------------------------------------------------
 0 0 N.A. -- -- -- --
 11 6.76 14 8 2 0 0
 -- -- 14 8 1 N.A. --
------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 21 3.83 43 20 3 N.A. --
 -- -- N.A. -- -- -- --
------------------------------------------------------------------------
-----------------------------------------------
School System No. of
 Negro
 in %
 Total Total Formerly
 Number Number White
 Negro White Schools
-----------------------------------------------
St. Martin
 1967-68 N.A. - - 3.2
 1968-69 3516 4871 128 3.6
 1969-70 3633 5178 195 5.36
-----------------------------------------------
St. Mary
 1967-68 N.A. - 467 11.7
 1968-69 5390 10,537 729 13.5
 1969-70 5137 10,283 977 19.01
-----------------------------------------------
Union
 1967-68 2058 2558 9 .4
 1968-69 2098 2589 14 .6
 1969-70 1855 2588 35 1.8
-----------------------------------------------
Vermilion
 1967-68 N.A. - - 19.5
 1968-69 1644 8138 722 44.0
 1969-70 1493 7862 686 45.9
-----------------------------------------------
Winn
 1967-68 1528 11 2402 58 3.8
 1968-69 1520 2392 69 4.5
 1969-70 1400 2256 73 5.2
-----------------------------------------------
-------------------------------------------------------------
 No. of Total Total CROSS
 ---------------
 Whites No. of No. of No. of
 in Negro White Negro
 % Formerly % Teachers Teachers Teachers
 Change Negro in %
 Schools Formerly
 White
 Schools
-------------------------------------------------------------
 0 0 N.A. -- -- --
 k .4 0 0 161 215 15 9.3
 k 1.76 0 0 N.A. - 19 --
-------------------------------------------------------------
 -- 0 0 N.A. -- -- --
 k 1.8 0 0 246 455 52 21.1
 k 5.51 0 0 N.A. -- -- --
-------------------------------------------------------------
 0 0 86 140 N.F.T * --
 k .2 0 0 91 134 17 18.5
 k 1.2 0 0 N.A. - 20 --
-------------------------------------------------------------
 0 0 N.A. -- -- --
 k 24.5 0 0 62 371 23 37.0
 k 1.9 0 0 74 375 39 52.7
-------------------------------------------------------------
 0 0 65 134 0 0
 k .7 0 0 68 140 7 10.3
 k .7 0 0 N.A. -- -- --
-------------------------------------------------------------
-------------------------------------------------------------------------------
OVERS Total STUDENTS FACULTY
---------------------- -------------------------------------------
No. of No. of No. of No. of No. of No. of
White Schools Schools Schools Schools Schools
Teachers in with with with with
in % System All- All- All- All-
Formerly Negro White Negro White
Negro Students Students Faculty Faculty
Schools
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 8 3.7 15 7 1 3 1
 11 -- 15 7 1 2 0
-------------------------------------------------------------------------------
 -- -- N.A. -- -- -- --
 12 2.63 26 9 1 2 N.A.
 -- -- 27 9 1 N.A. --
-------------------------------------------------------------------------------
N.F.T -- 9 2 5 N.A. --
 12 8.9 9 2 4 N.A. --
 20 - 9 1 3 N.A. --
-------------------------------------------------------------------------------
-- -- N.A. -- -- -- --
 3 .8 18 1 2 0 1
 5 10 1.3 18 1 2 0 0
-------------------------------------------------------------------------------
 0 0 12 4 4 4 8
 3 2.1 12 4 3 3 1
-- -- 12 4 3 N.A. --
-------------------------------------------------------------------------------
 
 
 [9]
 1967-68 reports of school board to the district court show that no teacher
 served full time in a Cross-over situation. 1968-69 reports do not
 distinguuish between full and part-time teachers.
 
 
 [10]
 Vermillion Parish has only one remaining school in which negroes are
 predominnant. That school is all-Negro.
 
 
 [11]
 Statistics on student integration in 1967-68 in Winn Parish appear to be
 derived from choice form reports to the district court dated September 8,
 1967. They do not necessarily represent the number of students attending
 integratted schools during that year.
 ---------------------------------------------------
 School System No. of
 Negro
 in %
 Total Total Formerly
 Number Number White
 Negro White Schools
---------------------------------------------------
No. 26450 & 27303
Eastern District
---------------------------------------------------
St. Helena
 1967-68 1917 1035 60 3.1
 1968-69 1954 1073 71 3.6
 1969-70 2019 1079 57 2.8
---------------------------------------------------
Iberville
 1967-68 4850 3459 370 7.3
 1968-69 4882 3464 448 9.2
 1969-70 4763 3508 477 10.0
---------------------------------------------------
Livingston
 1967-68 1486 7739 12 0.8
 1968-69 1530 8255 7 0.45
 1969-70 N.A. -- 4 --
---------------------------------------------------
Pointe Coupee
 1967-68 3476 2270 233 6.7
 1968-69 3700 2346 168 4.5
 1969-70 3340 2505 182 5.4
---------------------------------------------------
Ascension
 1967-68 3190 5776 58 1.8
 1968-69 2368 6245 101 4.3
 1969-70 2952 6464 161 5.45
---------------------------------------------------
West Baton Rouge
 1967-68 N.A. -- 126 N.A.
 1968-69 2442 2419 143 5.8
 1969-70 1576 2199 144 9.1
---------------------------------------------------
---------------------------------------------------------------
 #No. of Total Total CROSS
 ---------------
 Whites No. of No. of No. of
 in Negro White Negro
 % Formerly % Teachers Teachers Teachers
 Change Negro in
 Schools Formerly
 White
 Schools
---------------------------------------------------------------
---------------------------------------------------------------
 0 0 89 61 6 6.7
 k .5 0 0 97 68 6 6.1
 - .8 0 0 N.A. -- -- --
---------------------------------------------------------------
 0 0 211 179 5 2.4
 k 1.9 0 232 196 17 7.3
 k .8 0 0 N.A. -- -- --
---------------------------------------------------------------
 0 0 73 367 0 0
 - 0.35 0 0 110 363 36 32.7
 -- 0 0 N.A. -- -- --
---------------------------------------------------------------
 0 0 149 112 5 3.4
 - 2.2 0 0 151 116 11 7.3
 k .9 0 0 N.A. -- -- --
---------------------------------------------------------------
 0 0 161 258 5 3.1
 k 2.5 0 0 131 269 16 12.2
 k 1.15 0 0 N.A. -- -- --
---------------------------------------------------------------
 0 0 N.A. -- -- --
 N.A. 0 0 125 125 24 19.2
 k 3.3 0 0 N.A. -- -- --
---------------------------------------------------------------
--------------------------------------------------------------
OVERS Total STUDENTS FACULTY
--------------- ------------------------------------
 No. of No. of No. of No. of No. of No. of
 White Schools Schools Schools Schools Schools
Teachers in with with with with
 in % System All- All- All- All-
Formerly Negro White Negro White
 Negro Students Students Faculty Faculty
Schools
--------------------------------------------------------------
--------------------------------------------------------------
 3 4.9 N.A. -- -- -- --
 2 2.9 11 7 2 5 1
 -- -- 11 7 2 N.A. -
--------------------------------------------------------------
 2 1.1 N.A. -- -- -- --
 20 10.2 17 9 0 1 1
 -- -- 17 9 0 N.A. --
--------------------------------------------------------------
 0 0 N.A. -- -- -- --
 4 1.1 24 4 19 2 1
 -- -- N.A. -- -- -- --
--------------------------------------------------------------
 4 3.6 N.A. -- -- -- --
 10 8.6 10 5 0 0 0
 -- -- 10 5 0 N.A. --
--------------------------------------------------------------
 2 0.77 N.A. -- -- -- --
 11 4.1 12 5 2 0 0
 -- -- 13 6 0 N.A. --
--------------------------------------------------------------
 -- -- N.A. -- -- -- --
 26 20.8 9 5 1 N.A. --
 -- -- 8 4 1 N.A. --
--------------------------------------------------------------
 School System No. of
 Negro
 in %
 TotalTotal Formerly
 NumberNumber White
 Negro White Schools
------------------------------------------------------
West Feliciana
 1967-68 1856 844 140 5.0
 1968-69 1760 734 119 6.7
 1969-70 1707 759 112 6.5
------------------------------------------------------
East Feliciana
 1967-68 2030 1320 33 1.0
 1968-69 2912 1396 52 1.7
 1969-70 2934 1381 78 2.65
------------------------------------------------------
No. 27391
Eastern District
------------------------------------------------------
Tagipahoa
 1967-68 N.A. -- -- --
 1968-69 N.A. -- -- --
 1969-70 N.A. -- -- --
------------------------------------------------------
---------------------------------------------------------
 No. of Total Total CROSS
 ---------------
 Whites No. of No. of No. of
 in Negro White Negero
 % Formerly % Teachers Teachers Teachers
Change Negro in %
 Schools Formerly
 White
 Schools
---------------------------------------------------------
 0 0 80 46 2 2.5
 k1.7 0 0 85 44 3 3.5
 - .2 0 0 N.A. -- -- --
---------------------------------------------------------
 0 0 N.A. -- -- --
 k .7 0 0 135 81 4 2.9
 k .95 0 0 N.A. -- -- --
---------------------------------------------------------
---------------------------------------------------------
 -- -- -- N.A. -- -- --
 -- -- -- N.A. -- -- --
 -- -- -- N.A. -- -- --
---------------------------------------------------------
------------------------------------------------------------
OVERS Total STUDENTS FACUTLY
------------- ------------------------------------
 No. of No. of No. of No. of No. of No. of
 White Schools Schools Schools Schools Schools
Teachers in with with with with
 in % System All- All- All- All-
Formerly Negro White Negro White
 Negro Students Students Faculty Faculty
Schools
------------------------------------------------------------
 1 2.2 7 5 0 3 0
 1 2.3 6 4 1 3 0
 -- -- 6 4 1 N.A. --
------------------------------------------------------------
 -- -- 11 7 1 N.A. --
 5 6.2 11 7 1 4 1
 -- -- 11 7 0 N.A. --
------------------------------------------------------------
------------------------------------------------------------
 -- -- N.A. -- -- -- --
 -- -- N.A. -- -- -- --
 -- -- N.A. -- -- -- --
------------------------------------------------------------
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC IN NO. 27106.
 PER CURIAM:
 The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.
 ON MOTION FOR CLARIFICATION AND AMENDMENT IN NOS. 26450, 27303, 27054, 27087, 27106
 PER CURIAM:
 In these consolidated cases the United States has moved that the decision and order of this court entered on May 28, 1969, be clarified and amended so as to make clear that our order giving expedited treatment to appeals from orders or decrees of the district court on remand is limited to orders or decrees pertaining to relief for the 1969-70 school year only. The attorneys for the appellants have joined in the request.
 The order of the court of May 28, 1969, is amended so as to delete therefrom the following:
 Any appeals from orders or decrees of the district court on remand shall be expedited. Any appeal may be on the original record. The record on any appeal shall be lodged with this court and appellant's brief filed, all within thirty days of the date of the order or decree of the district court from which the appeal is taken.
 and by substituting therefor the following:
 Any appeals from orders or decrees of the district court on remand pertaining to relief for the 1969-1970 school year shall be expedited. Any such appeal may be on the original record. The record on any such appeal shall be lodged with this Court and appellant's brief filed, all within thirty days of the date of the order or decree of the district court from which appeal is taken.
 Any appeals from orders or decrees of the district court on remand pertaining to relief for a year subsequent to the 1969-1970 school year shall, unless otherwise ordered by the court, be taken in acordance with the Federal Rules of Appellate Procedure.
 
 
 [1]
 United States v. Jefferson County Bd. of Educ., 372 F.2d 836 (5th Cir. 1966) (hereinafter, Jefferson I), aff'd with modifications on rehearing en banc, 380 F.2d 385 (5th Cir.) (hereinafter, Jefferson II), cert. denied sub nom., Caddo Parish Sch. Bd. v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967)
 
 
 [2]
 Green v. County Sch. Bd. of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968)
 
 
 [3]
 Conley v. Lake Charles Sch. Bd., 293 F.Supp. 84 (W.D.La.1968)
 
 
 [4]
 By order of January 9, 1969, without opinion, this court, after a poll of its members, denied the motion of appellants in the Western District cases that those cases be heard by the court en banc. Cleveland v. Union Parish Sch. Bd., 406 F.2d 1331 (5th Cir. 1969). The dissenting opinion to that order appears in 406 F.2d at 1333
 Both the Western District and the Eastern District cases were among those consolidated on appeal in Adams v. Mathews, 403 F.2d 181 (5th Cir. 1968).
 
 
 [5]
 303 F.Supp. 1224 (E.D.La.1969)
 
 
 [6]
 298 F.Supp. 283 (E.D.La.1969)
 
 
 [7]
 'Here the district court found that the school board acted in good faith. But good faith does not excuse a board's non-compliance with its affirmative duty to liquidate the dual system. Good faith is relevant only as a necessary ingredient of an acceptable desegregation plan.' Henry v. Clarksdale Municipal Separate Sch. Dist., supra 409 F.2d at 684
 
 
 [8]
 Twenty-two of the school boards were ordered to integrate their school systems beginning with the 1965-66 school year. Two boards commenced with the 1964-65 school year. Nine began in 1966-67, and five did not begin until the 1967-68 school year
 
 
 [9]
 'With every ounce of sincerity which we possess we think freedom of choice is the best plan available. We are not today going to jeopardize the success already achieved by casting aside something that is working and reach blindly into an experimental 'grab bag."
 
 
 [293]
 F.Supp. at 88
 
 
 [10]
 See the concurring opinion of Judge Rubin in Duval County:
 'Green emphasizes that school officials have a continuing duty to take whatever action may be necessary to provide 'prompt and effective disestablishment of a dual system.' If one method is ineffective, they are to try another. Hence, no single plan is or can be judicially approved as a catholicon. 'Brown I and all of its successors, as well as Green, Monroe, and Raney, contemplate that school plans will be prepared by local officials and school boards, not by courts. But if local officials fail to assume their responsibilities under the Constitution, district courts must continue to attempt to formulate the plans that should be prepared by school officials based on their expert knowledge, training and skill.'
 402 F.2d at 908.
 
 
 [11]
 See, e.g., the discussion of Whittenberg v. Greenville County School District, 298 F.Supp. 784 (D.C.S.C., March 31, 1969), at note 14, infra, and accompanying text
 
 
 [12]
 But a plan which contributes toward preserving segregated schools by incorporating zones corresponding to racially separate residential patterns is unacceptable. United States v. Indianola, supra
 
 
 [13]
 At least two district judges in Louisiana have ordered the use of the facilities of this center. Tangipahoa Parish, before us on this appeal, was ordered on October 15, 1968 to produce a plan for the 1969-70 school year for unitary operation of its school system. When the school board informed the court that it was unable to find a plan better than the one in existence, the court appointed the Center to prepare a plan. A hearing has not yet been held on whether the Center's plan will be adopted
 In Harris v. St. John the Baptist Parish Sch. Bd., Civ.No. 13212 (E.D.La. Apr. 23, 1969), the school board, after it did not come up with a plan of its own, was ordered to consult with the Center. A hearing was set on the Center's plan. The board came in with two plans of its own. The district judge accepted one of the board's plans, which incorporated some of the Center's suggestions.
 
 
 [14]
 The district court directed that all school districts submit to the Office of Education, HEW, their existing method of operation, along with any changes proposed by them, and to seek to develop in conjunction with HEW an acceptable plan of operation 'conformable to the constitutional rights of the plaintiffs * * * and consonant in timing and method with the practical and administrative problems faced by the particular districts.' If a plan is agreed upon by the school district and HEW, the South Carolina district court will approve it unless the plaintiffs show it does not meet constitutional standards. If the school district already is operating under a plan approved by HEW, it will be adopted by the court absent a showing of constitutional infirmity. If no agreed plan is developed, the court will hold a hearing and enter its decree, considering the respective proposed plans of the district, the plaintiffs, and HEW
 
 
 [15]
 The Supreme Court said: 'The general experience under 'freedom of choice' to date has been such as to indicate its ineffectiveness as a tool of desegregation.' 391 U.S. 430, 88 S.Ct. 1689, 1695, 20 L.Ed.2d at 725
 See also the opinion of District Judge Heebe in Moses v. Washington Parish School Board, 276 F.Supp. 834 at 851-852 (E.D.La.1967):
 'If this Court must pick a method of assigning students to schools within a particular school district, barring very unusual circumstances, we could imagine no method more inappropriate, more unreasonable, more needlessly wasteful in every respect, than the socalled 'free-choice' system.
 'Under such a system the school board cannot know in advance how many students will choose any school in the system-- it cannot even begin to estimate the number. The first principle of pupil assignment in the scheme of school administration is thus thwarted; the principle ought to be to utilize all available classrooms and schools to accommodate the most favorable number of students; instead, this aim is surrendered in order to introduce an element of 'liberty' (never before part of efficient school administration) on the part of the students in the choice of their own school. Obviously there is no constitutional 'right' for any student to attend the public school of his own choosing. But the extension of the privilege of choosing one's school, far from being a 'right' of the students, is not even consistent with sound school administration. Rather, the creation of such a choice only has the result of demoralizing the school system itself, and actually depriving every student of a good education.
 'Under a 'free-choice' system, the school board cannot know or estimate the number of students who will want to attend any school, or the identity of those who will eventually get their choice. Consequently, the board cannot make plans for the transportation of students to schools, plan curricula, or even plan such things as lunch allotments and schedules; moreover, since in no case except by purest coincidence will an appropriate distribution of students result, and each school will have either more or less than the number it is designed to efficiently handle, many students at the end of the free-choice period have to be reassigned to schools other than those of their choice-- this time on a strict geographical-proximity basis, see the Jefferson County decree, thus burdening the board, in the middle of what should be a period of firming up the system and making final adjustments, with the awesome task of determining which students will have to be transferred and which schools will receive them. Until that final task is completed, neither the board nor any of the students can be sure of which school they will be attending; and many students will in the end be denied the very 'free choice' the system is supposed to provide them.'
 
 
 [16]
 See Davis v. Mobile County, supra, in which this court required a zone plan for urban areas but left freedom of choice in effect in rural areas. See also the dissenting opinion to the denial of en banc hearing in the instant cases, 406 F.2d at 1338-1339: 'I am not suggesting that freedom of choice should necessarily be abandoned in favor of zoning. * * * There is nothing necessarily unconstitutional about freedom of choice of geographic zoning or a combination of the two.'